**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**


AMY MARTINEZ                                                   PLAINTIFF


v.                         NO. 3:25-cv-00239-PSH


FRANK BISIGNANO, Commissioner of                              DEFENDANT
the Social Security Administration


<u>MEMORANDUM OPINION AND ORDER</u>


In this case, plaintiff Amy Martinez ("Martinez") challenges the denial of her applications for disability insurance benefits and supplemental security income payments. It is Martinez's contention that the Administrative Law Judge ("ALJ") erred at step two of the sequential evaluation process and in assessing Martinez's residual functional capacity. Substantial evidence on the record as a whole supports the ALJ's decision, and the decision is not based on any legal error. This case will therefore be dismissed.[1]

---

[1]    The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." <u>See</u> <u>Sloan v. Saul</u>, 933 F.3d 946, 949 (8th Cir. 2019).

The record reflects that Martinez was born on June 7, 1974, and was forty-nine years old on July 15, 2023, the alleged onset of disability date. She alleged that she became disabled and unable to work as a result of "residuals from [the] removal of [a] tumor in [her] back, residuals from multiple surgeries, neuropathy, sciatica, migraines, non-alcoholic cirrhosis of [the] liver, multiple tumors, and depression." See Transcript at 317.

In the ALJ's decision denying Martinez's applications, the ALJ summarized the evidence. See Transcript at 18-19, 20-25. Martinez, in her brief, also summarized the evidence, albeit in much greater detail. See Docket Entry 7 at CM/ECF 3-19. There is no dispute about the evidence, and it is not necessary to recite it in any great detail. The Court will simply recite the evidence briefly in the context of addressing Martinez's assertions of error.

Martinez first maintains that the ALJ committed error at step two when he failed to find that Martinez's severe impairments include depression, anxiety, and Post-Traumatic Stress  Disorder ("PTSD"). Martinez notes that while the evidence might suggest her mental impairments are not disabling, "they may well further reduce her residual functional capacity and thus have more than a minimal effect on her ability to work." See Docket Entry 7 at CM/ECF 27.

2

At step two, the ALJ is required to identify the claimant's impairments and determine if they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) (internal quotations omitted). The determination is strictly a medical determination. See Bowen v. Yuckert, 482 U.S. 137 (1987).

At step two, the ALJ found that Martinez has severe impairments in the form of degenerative disc disease of the lumbar spine, Hepatitis C, and carpal tunnel syndrome status-post release. The ALJ acknowledged that Martinez has mental impairments in the form of a depressive disorder, an anxiety disorder, and PTSD but found that the impairments do not cause more than a minimal effect on her ability to work and are therefore not severe. He so found after reviewing the four broad areas of mental functioning and finding the relevant evidence to be as follows:

> ... [m]ental status examinations contained in evidence have noted many normal findings, with [Martinez] being noted, at times, to be in no distress, to be well nourished, to be well groomed, to exhibit fluent speech, to exhibit normal mood, to exhibit normal insight, to exhibit fair memory, to exhibit fair concentration, to exhibit average intellectual functioning, to exhibit logical and goal directed thought processes, to maintain good eye contact, and to exhibit normal judgment (e.g. Exhibits B30F2; B27F/6/14-15; B20F/3/6; B19F/9-10; B18F/7; B17F/4-5).

> In addition, [Martinez] has reported a degree of activity that does not support a finding that she has more than mild limitations in her mental functioning. She has reported being able to attend to her personal care needs, to prepare simple meals, to drive a car, to shop in stores, to watch television, to perform scrapbooking, and to spend time with family members (Hearing Testimony; Exhibits B4A; B8E). The evidence also reveals that [she] can attend medical appointments as reflected by the medical evidence contained in the record (Exhibits B1F-B30F).

See Transcript at 19.

Substantial evidence on the record as a whole supports the ALJ's finding that Martinez's depression, anxiety, and PTSD have no more than a minimal effect on her ability to work and are therefore not severe. The Court so finds for two reasons.

First, the medical evidence relevant to Martinez's depression, anxiety, and PTSD is unremarkable. For instance, Martinez saw Dr. Clay Spencer, M.D., ("Spencer") on March 24, 2023, for complaints of worsening depression. See Transcript at 1188-1190. The progress note reflects, though, that her depression was situational, as it was caused by her extremely unfortunate circumstances. Spencer observed that Martinez was alert and oriented and her insight and judgment were good, although her mood and affect were anxious and tearful. He diagnosed a depressive disorder, prescribed fluoxetine, and initiated a referral to a psychiatrist.

4

On December 5, 2023, Martinez was seen by Tashina Brown ("Brown"), an Advanced Practice Nurse, at Hometown Behavioral Health for an initial psychiatric evaluation. See Transcript at 1563-1567. Martinez reported a history of depression, anxiety, and trauma caused by abusive relationships. The results of a mental status examination were largely unremarkable. She had, inter alia, good eye contact, normal speech, local and goal-directed thought processes, good orientation, and fair memory and concentration, although she had a dysphoric mood. Brown prescribed medication and therapy.

Martinez thereafter saw Brown for follow-up examinations. See 1610-1615. At a March 18, 2024, follow-up, Martinez reported doing better. The results of a mental status examination were unremarkable, as she was observed to have, inter alia, an appropriate affect, euthymic mood, logical and goal-directed thought processes, and normal judgment and insight.

Spencer and Brown's unremarkable observations are consistent with those made by other medical providers who saw Martinez for other impairments. For instance, Martinez was seen on October 27, 2023, at the St. Bernards Heart and Vascular Clinic for complaints of chest pain. See Transcript at 1602-1606. She was observed to be oriented to time, person, and place and have an appropriate mood. Dr. Santiago Moscoso, M.D.

("Moscoso") saw Martinez on January 23, 2024, for her liposarcoma and to review testing. See Transcript at 1708-1714. He observed that her mental status was normal, as was her mood. Lori Black ("Black"), an Advanced Practice Nurse, saw Martinez on July 1, 2024, for her liposarcoma. See Transcript at 1699-1705. Martinez was observed to have a normal mental status, a normal mood, and normal insight and judgment.

Second, notwithstanding the foregoing, the ALJ's failure to identify Martinez's depression, anxiety, and PTSD as severe impairments at step two is ultimately of little legal significance. Once the ALJ proceeds past step two, as he did here, the labeling of an impairment as "severe" or "non-severe" has little legal significance because the ALJ must consider all of the claimant's impairments in assessing her residual functional capacity. See 20 C.F.R. 416.945(e). Here, the ALJ did so, as he noted in making the assessment that her depression, anxiety, and PTSD cause no more than mild limitations in her adaptive functioning. See Transcript at 24.

Martinez offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Martinez maintains that her residual functional capacity was erroneously assessed. Martinez offers two reasons why, the first being that the ALJ failed to fully explain why he found Spencer's medical opinions unpersuasive.

6

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). In making the assessment, the ALJ is obligated to consider the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). The regulations governing the consideration of medical opinions provide the following:

> ... [ALJs] "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. ... Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. ... ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. ... The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. ...

See Phillips v. Saul, No. 1:19-cv-00034-BD, 2020 WL 3451519, 2 (E.D.Ark. June 24, 2020).[2]

---

[2]    With respect to the supportability factor, "an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion." See Morton v. Saul, No. 2:19-cv-92-RLW, 2021 WL 307552, 7 (E.D.Mo. Jan. 29, 2021). With respect to the consistency factor, "an opinion is more persuasive if it is more consistent with the overall evidence as whole." See Id.

The record reflects that Spencer completed a Medical Source Statement-Physical ("Statement") in which he offered his opinions about the limitations caused by Martinez's impairments. See Transcript at 1731-1732. In the Statement, he reported that she has physical problems caused by myxoid liposarcoma, which required surgery in 2009, and low back pain. He opined, inter alia, that she can occasionally lift and carry a maximum of twenty pounds, stand and walk for about three hours in an eight-hour workday, and sit for about four hours in an eight-hour workday. She can never climb or balance and can only occasionally stoop, kneel, crouch, and bend. She requires frequent rest periods, longer than normal breaks, and the opportunity to shift at will from sitting or standing/walking. On average, her impairments and/or treatment for her impairments would cause her to miss about three days of work per month. Spencer based his opinions about Martinez's limitations on her "surgical/radiation history [and] surgical scars." See Transcript at 1732.

The ALJ assessed Martinez's residual functional capacity and found that she is capable of performing a reduced range of light work. See Transcript at 20. In making the assessment, the ALJ discounted many of the medical opinions Spencer offered in the Statement. The ALJ gave the following reasons for doing so:

8

> The undersigned has reviewed and considered the Medical Source Statement—Physical dated October 29, 2024, and contained in evidence at Exhibit B29F. In this form, [Spencer] indicated that [Martinez's] impairments limit her to work at less than the full range of sedentary with exertional, postural, and manipulative limitations, including being absent three days per month and in support of this opinion cited to the claimant's surgical history ... However, this opinion is not consistent with the evidence that documents normal physical examination findings, including noting, at times, the claimant to be in no distress, to exhibit no evidence of abdominal tenderness, to exhibit no evidence of guarding or rebound, to exhibit normal bowel sounds, to exhibit normal muscle strength and tone, to exhibit no evidence of muscle wasting, to exhibit normal and symmetrical deep tendon reflexes, to exhibit no evidence of extremity edema, to exhibit normal gait and station, and to exhibit no focal neurological deficits (e.g., Exhibits B27F/6/14-15; B23F/8; B19F/9-10; B18F/9/17; B14F/13/24/27/39/42; B10F/8/12/16/21). This opinion is also not consistent with the claimant's reported activity level in that she has reported ... being able to attend to her personal care needs, to prepare simple meals, to drive a car, to shop in stores, to watch television, to perform scrapbooking, and to spend time with family members (Hearing Testimony; Exhibits B4A; B8E). In this case, the evidence supports limiting the claimant to work at less than the full range of light with the postural, manipulative, and environmental limitations detailed above but does not support a finding that the claimant requires any additional limitations. Accordingly, to the extent that it is consistent with the evidence, the undersigned finds this opinion persuasive.

See Transcript at 24-25. The ALJ found at step four that Martinez cannot perform her past work but found at step five there is other work available for someone of her age, education, work experience, and residual functional capacity.

Martinez maintains that in evaluating Spencer's medical opinions, "the ALJ did not discuss the supportability factor at all; rather, he focused his brief discussion entirely on the consistency factor." See Docket Entry 7 at CM/ECF 23. To the extent the ALJ considered the consistency factor, Martinez additionally maintains that the ALJ's analysis is flawed because it is inconsistent with the "other medical evidence and with Martinez's activities." See Docket Entry 7 at CM/ECF 24. Specifically, Martinez notes that her oncologists and Spencer's nurse restricted Martinez to less than strenuous physical activity, and none of her daily activities contradict the limitations found by Spencer.

The Court acknowledges that Martinez's contentions have some initial appeal, as the ALJ's consideration of Spencer's medical opinions is not a model of skillful draftsmanship. The ALJ rolled his analysis of the supportability and consistency factors into a single, intertwined paragraph requiring some effort to determine at what point in the analysis he addresses the supportability factor and at what point he addresses the consistency factor. The Court nevertheless finds that the ALJ considered both factors, and substantial evidence on the record as a whole supports his treatment of Spencer's opinions. The Court so finds for the following reasons.

First, with respect to the supportability factor, the ALJ noted the "evidence that documents [Martinez's] normal physical examinations findings," see Transcript at 24, and cited Spencer's own progress notes in support of the proposition. Specifically, the ALJ cited Spencer's notes from eight presentations, most of which were for Martinez's complaints of back and hip pain. See Transcript at 24.[3] The notes are similar in most respects. They reflect that Martinez never exhibited any apparent distress, and there were some presentations when she voiced no complaints of pain whatsoever. Although she routinely had tenderness around an incision site in her lower back and some tenderness in her lumbar muscles and right buttocks, she was always ambulatory. He otherwise made no significant observations about her exertional, postural, or manipulative limitations. Spencer prescribed pain medication, recommended rest, heat, stretching, and walking, and eventually referred Martinez to a chronic pain specialist. It is noteworthy that at the February 6, 2024, presentation, he even recommended exercise for her obesity. See Transcript at 1586.

---

[3]     See Transcript at 1171-1173 (07/24/2023), cited by the ALJ as B10F/16; 1167-1169 (08/03/2023), cited by the ALJ as B10F/12; 1519-1521 (09/26/2023), cited by the ALJ as B14F/39; 1504-1507 (11/08/2023), cited by the ALJ as B14F/24; 1493-1496 (12/04/2023), cited by the ALJ as B14F/13; 1583-1586 (02/06/2024), cited by the ALJ as B18F/17; 1575-1578 (04/17/2024), cited by the ALJ as B18F/9; 1633-1636 (05/28/2024), cited by the ALJ as B23F/8.

Spencer's progress notes cited by the ALJ are similar in most respects to the other notes Spencer compiled when seeing Martinez for her complaints of back and hip pain.[4] The notes reflect unremarkable findings about Martinez's impairments and the limitations they cause. For instance, she repeatedly reported tenderness around an incision site in her lower back and some tenderness in her lumbar muscles and right buttocks, but he otherwise made no significant observations about her exertional, postural, or manipulative limitations. The notes reflect her use of prescription pain medication but otherwise reflect conservative, non-medical treatment measures.

In summation, there is little in Spencer's progress notes to support the severity of limitations he opined about in the Statement. The ALJ could therefore find as he did with respect to the supportability factor.

Second, with respect to the consistency factor, the ALJ cited other medical evidence and Martinez's daily activities in support of finding Spencer's medical opinions unpersuasive. For instance, the ALJ cited the progress notes of Nancy Baltz ("Baltz"), a Nurse Practitioner in Spencer's

---

[4]    See, e.g., Transcript at 506-508 (12/12/2017), 488-490 (10/25/2018), 474-476 (04/03/2019), 460-463 (10/18/2019), 436-438 (09/01/2020), 1283-1286 (05/27/2021), 1267-1269 (07/26/2021), 1252-1255 (10/21/2021), 1246-1248 (12/02/2021), 1237-1239 (01/27/2022), 1234-1236 (02/07/2022), 1231-1233 (02/23/2022).

office, who repeatedly observed that Martinez had some tenderness around her healed surgical site and in her lumbar spine but otherwise was typically in no apparent distress, had a normal gait, and left ambulatory.[5] Baltz continued Martinez on prescription medication for her pain.

The ALJ cited the progress note from Martinez's visit to the St. Bernards Heart and Vascular Clinic on October 27, 2023, for her complaints of chest pain. See Transcript at 1602-1606, cited by the ALJ as B19F/9-10. The note reflects unremarkable findings and observations. A review of her musculoskeletal system revealed, in part, that she had a normal gait and was able to exercise. Prescription and over-the-counter medications were prescribed, and she was encouraged to exercise.

The ALJ cited the progress note from Martinez's January 23, 2024, consultation with Moscoso for liposarcoma and a review of testing. See Transcript at 1708-1714, cited by the ALJ as B27F/14-15. The notes reflect insignificant findings and observations and contains the notation that a "3/30/22 MRI of [her] lumbar spine without contrast was unremarkable." See Transcript at 1708. A review of Martinez's musculoskeletal system revealed no myalgia, bone pain, arthralgia, or joint swelling. She had a

---

[5]    See, e.g., Transcript at 1177-1180 (05/12/2023), cited by the ALJ as B10F/21; 1164-1166, 1523-1525 (09/01/2023), cited by the ALJ as B10F/8 and B14F/42; 1508-1510 (11/02/2023), cited by the ALJ as B14F/27;

normal range of motion, normal strength and tone, and normal gait and station. On her right back, though, "where surgery was done, the area is very tender to touch but no palpable masses." See Transcript at 1712. In a Performance Status portion of the note, Moscoso noted the following: "Restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work." See Transcript at 1171.[6]

The ALJ cited the progress note from Martinez's July 1, 2024, follow-up with Black for liposarcoma. See Transcript at 1699-1705, cited by the ALJ as B27F/6. Martinez presented feeling well and denied any complaints. Black's note is otherwise substantially similar to Moscoso's earlier note. For instance, Black, like Moscoso, observed that Martinez had normal strength and tone and a normal gait and station.

The ALJ could and did also find that the extent of Martinez's daily activities undermine Spencer's medical opinions. The ALJ found, and the record supports the finding, that Martinez can attend to her personal care needs, prepare simple meals, drive a car, shop in stores, watch television,

---

[6]    The Court agrees with Martinez that although Moscoso used the term "light work," "the examples [he] gave of light housework or office work make it likely that he did not have in mind light work as defined by the Social Security Administration, meaning work that requires standing and/or walking for six hours out of an eight-hour workday." See Docket Entry 7 at CM/ECF 25.

14

perform scrapbooking, and spend time with family members. The ability to perform those activities tend to show that she is not as severely limited as Spencer opined. Instead, the activities support the proposition that she can perform a reduced range of light work.

In summation, there is little in Spencer's progress notes to support the severity of limitations he opined about in the Statement. The ALJ could therefore find as he did with respect to the consistency factor.

Martinez offers a second reason why her residual functional capacity was erroneously assessed. She maintains that the assessment does not account for the limitations caused by her various impairments, for instance, her degenerative disc disease, sciatic nerve damage, and carpal tunnel syndrome. She notes that "the medical evidence, including Martinez's regular reports of back pain, for which she has been prescribed medication, and ... Spencer's medical source statement, does not support the ALJ's finding that she is capable of performing light work." See Docket Entry 7 at CM/ECF 29-30.

As the Court has noted, the ALJ found that Martinez is capable of performing a reduced range of light work. The range of light work is reduced by the following restrictions:

15

... she can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She cannot operate foot controls with her bilateral lower extremities. She must avoid concentrated exposure to wetness, humidity, extreme heat, extreme cold, and can have no exposure to workplace hazards, such as operation of dangerous machinery, driving, or exposure to unprotected heights. She is limited to work performed in an environment with no more than a moderate noise level as defined in the Selected Characteristics of Occupations, the companion publication to the Dictionary of Occupational Titles.

See Transcript at 20.

The Court finds that the ALJ adequately considered the limitations caused by all of Martinez's impairments, and substantial evidence on the record as a whole supports the ALJ's findings as to those limitations. Specifically, the ALJ fully considered Martinez's allegations about the limitations caused by her impairments, see Transcript at 21, the medical evidence relevant to her physical and mental impairments, see Transcript at 21-24, her subjective complaints, see Transcript at 23, and the findings of the state agency medical consultants, see Transcript at 24.

"It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the [ALJ's] decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201

16

(D.S.D. 2016). In fact, the Court may not reverse the ALJ's decision merely because substantial evidence would have supported an opposite decision. See Id. Here, the ALJ could find as he did with respect to the limitations caused by all of Martinez's impairments.

The Court finds, in conclusion, that there is substantial evidence on the record as a whole to support the ALJ's findings, and he did not commit legal error. Martinez's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner of the Social Security Administration.

IT IS SO ORDERED this 8th day of July, 2026.

_____
UNITED STATES MAGISTRATE JUDGE

17